## In re HOWARD RUBBER CO., INC., Debtor.

**Bankruptcy No. 181–12827–260.**

United States Bankruptcy Court, E.D. New York.

May 15, 1984.

Siegel, Sommers & Schwartz by Leonard Schwartz, New York City, for trustee.

Epstein, Reiss & Goodman by Ronald Goodman, New York City, for debtor.

Fensterheim & Fensterheim by Asher Fensterheim, New York City, for Rosenthal & Rosenthal.

### DECISION AND ORDER

CONRAD B. DUBERSTEIN, Bankruptcy Judge.

This bankruptcy proceeding was originally commenced when the debtor sought relief under Chapter 11 of the Bankruptcy Code. After an unsuccessful attempt at reorganization which lasted several months, this Court converted the case to a Chapter 7 liquidation proceeding.

Prior to the filing of the Chapter 11 petition the debtor was obligated to a Lender which held as collateral security for its advances all of the debtor's assets. After the petition was filed the debtor was authorized by an Order of this Court to enter into a loan agreement with Rosenthal & Rosenthal, Inc. ("Rosenthal") whereby the balance due the original Lender was paid out of advances which Rosenthal was authorized to make to the debtor up to $500,-000 on a revolving loan basis, secured by all of the assets of the debtor. The Creditors' Committee which had been appointed by this Court pursuant to Section 1102, consented to the entry of the Order before it was presented to this Court for signature.

About three months later, the debtor requested additional funds from Rosenthal. In the apparent belief that further advances would adversely affect its secured position, and as a business decision which it believed was necessary, Rosenthal refused to make any further advances. The debtor thereupon sought assistance elsewhere and found a lender willing to lend it $50,000. The new "Angel" was its landlord, a corporation known as Sherbert Realty Corp. ("Sherbert"), whose principal officers and stockholders were the same as those of the debtor, Emanuel Howard and Bernard Brown. Sherbert had no pocket, deep or otherwise, and its source of the funds

which it had agreed to lend to the debtor, was Rosenthal. As a condition to its advance to Sherbert, Rosenthal was given a mortgage on Sherbert's real estate. This mortgage was in addition to a previous mortgage on the same property which Rosenthal had exacted of Sherbert at the time Rosenthal made its initial advance to the debtor.

The Creditors' Committee had no objection to Sherbert lending the debtor the $50,000 but it unequivocally refused to have the loan collateralized by any of the debtor's assets. Thus, the Order which the Creditors' Committee consented to, and which this Court signed, authorized the debtor to borrow $50,000 from Sherbert with the provision that "Sherbert Realty Corp. shall lend these funds to the debtor as an administration expense creditor of the debtor." Although the Order further provided that the debtor repay Sherbert the monies borrowed "under the same terms and conditions that Sherbert Realty Corp. will be borrowing said funds from Rosenthal & Rosenthal and at the same rate of interest that Sherbert Realty Corp. shall be paying to Rosenthal & Rosenthal" it is clear that Sherbert was given nothing more than the administration expense status provided for by the Order. No financing agreement or financing statement required by the Uniform Commercial Code and the laws of the State of New York to perfect a lien was executed or filed. As noted, the Creditors' Committee insisted and saw to it that no such security was to be given. All that it consented to and all that Sherbert got was an administration expense status.

The debtor was unable to proceed with a successful reorganization. Upon conversion to a Chapter 7 case this Court entered an Order which authorized the trustee appointed by this Court to sell the assets at public auction on behalf of the trustee and "the secured parties". The trustee's application for the sale sought a sale "free and clear of any and all alleged liens of Rosenthal & Rosenthal and Sherbert Realty Corp.". The Order further provided that the net proceeds of sale, less auctioneer's expenses and commissions, be deposited

with Rosenthal subject to the determination by this Court of the validity and extent "of the alleged liens of Rosenthal & Rosenthal and Sherbert Realty Corp." and that to the extent of the validity of such liens, "no charges shall be made by the trustee or his attorneys nor shall any other administration charges attach to the proceeds." Finally, the Order provided that in the event the net proceeds exceeds the amount due the "alleged secured parties", Rosenthal is directed to pay the trustee the difference with interest.

The sale was conducted as authorized, this Court determined the validity and extent of Rosenthal's lien and the amount due thereunder was paid to it out of the escrow funds. A balance of $17,233.64 remains in the escrow fund which accrues interest. The trustee now holds the funds.

Howard and Brown have moved this Court for an Order authorizing the payment to them of the surplus in the escrow account, to the exclusion of the trustee. The thrust of their argument is that they are the successors to Sherbert which they ask this Court to deem to be the guarantor of the debts of the debtor as to the first financing order and as an accommodation maker as to the $50,000 advance. The trustee's contention is that inasmuch as Sherbert was unquestionably indebted to the debtor prior to the filing of the petition in bankruptcy in the sum of $40,000, any monies which might have become due to Sherbert can be offset against Sherbert's administration expense claim. He also argues that the sole benefit which accrued in favor of Sherbert in consideration of its loan to the debtor, was the administration expense claim status it was given by the Order, that it has no lien and that the entire balance remaining in the escrow fund should be paid over to the fund.

The facts presented to this Court clearly indicate that Rosenthal loaned the $50,000 to Sherbert which in turn loaned it to the debtor. Simultaneously the debtor executed and delivered its promissory note to Sherbert for the $50,000, which in turn

signed it and pledged it to Rosenthal as additional collateral security for the $50,-000 loan Rosenthal made to Sherbert.

It is Brown and Howard's contention that they paid Rosenthal the amount due it from Sherbert in order to satisfy Rosenthal's lien on Sherbert's real estate. They also claim that by reason of the fact that the Order which authorized the debtor to borrow the $50,000 from Sherbert provided that the debtor repay it "under the same terms and conditions that Sherbert Realty Corp. will be borrowing said funds from Rosenthal & Rosenthal....", they are subrogated to the claims of Sherbert as its successor. Thus, they argue that they are entitled to the excess funds.

An examination of the lending agreements which accompanied the loan made by Rosenthal to Sherbert sets forth "terms and conditions" dealing with various covenants which governed the transaction whereby "Sherbert borrowed the funds from Rosenthal". Those "terms and conditions" related to numerous obligations as well as rights as between the lender and the borrower and although it further provided for a lien on Sherbert's assets, there is no provision for any lien on the debtor's assets. Had it been the intention of this Court, with the consent of the Creditors' Committee, to have provided for any portion of Rosenthal's lien to be assigned to Sherbert upon the payment of Sherbert's obligation to Rosenthal, the Order would have clearly provided for it. However, as appears from the Order, what it gave Sherbert in consideration for its promise to advance the $50,000 to the debtor was solely and only the status of an administration expense creditor. Nowhere in the lending agreement between Rosenthal and the debtor as well as between Sherbert and the debtor is there any provision that in the event Sherbert paid Rosenthal in its capacity either as a guarantor or as an accommodation maker, as contended by Brown and Howard, would Sherbert be subrogated to all of the rights and interests of Rosenthal in and to the assets of the debtor. If Brown and Howard are subrogees of Sherbert, as they claim to be, they can only be subrogees to the extent of Sherbert's interests and rights in and to the debtor's assets which generated the proceeds of sale which they now seek. It is clear that the only claim Sherbert had against the debtor arose out of the Order of this Court which merely gave Sherbert an administration expense claim but no lien. Thus, even if this Court were to accept their contention that they are Sherbert's subrogees and their rights and interests are the same as those of Sherbert, they are limited only to what Sherbert had, namely, an administration expense claim. To hold otherwise would not only provide them with a greater interest than what the $50,000 Order clearly intended, but would clearly be in contravention of the intention of the Creditors' Committee in agreeing to permit the debtor to borrow that sum without anywise creating a lien or affecting the assets of the debtor.

The application by Howard and Brown to be paid the balance remaining in the escrow account is denied and Rosenthal is directed to pay the same over to the trustee.

SO ORDERED.